COOLEY LLP
WILLIAM P. DONOVAN, JR. (155881)
(wdonovan@cooley.com)
1333 2nd Street, Suite 400
Santa Monica, CA  90401
Telephone:   (310) 883-6400
Facsimile:    (310) 883-6500

WAYNE STACY (*appearing pro hac vice*)
(wstacy@cooley.com)
380 Interlocken Crescent, Suite 900
Broomfield, CO 80021-8023
Telephone:  (720) 566-4125
Facsimile:   (720) 566-4099

PRIYA B. VISWANATH (238089)
(pviswanath@cooley.com)
3175 Hanover Street
Palo Alto, CA  94304-1130
Telephone:   (650) 843-5000
Facsimile:    (650) 849-7400

Attorneys for Plaintiff
TMC AEROSPACE, INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| TMC AEROSPACE, INC., | Case No. 2:15-cv-07595-AB-E |
| Plaintiff, | **TMC AEROSPACE, INC.'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS** |
| v. | |
| ELBIT SYSTEMS OF AMERICA LLC, | [Objections to Request for Judicial Notice, or, In the Alternative, Request for Judicial Notice filed concurrently herewith] |
| Defendant. | Hearing Date: February 1, 2016 |
| | Time: 10:00am |
| | Place: Courtroom 4, 2nd floor |
| | Judge: Hon. André Birotte Jr. |
| | Complaint filed September 28, 2015 |

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................................. 1

II.    STATEMENT OF FACTS ................................................................... 1

III.   LEGAL STANDARD ......................................................................... 2

IV.    ARGUMENT ...................................................................................... 3

    A.   TMC Adequately Pleaded Its Patent Infringement Claims
        (Count 1) ................................................................................... 3

        1.   TMC adequately pleaded direct infringement based on
            ESA's manufacturing and offers for sale of TMC's
            patented De-Icing Systems. ...................................... 3

        2.   TMC adequately pleaded indirect infringement based on
            ESA's manufacturing and offers for sale of TMC's
            patented De-Icing Systems. ...................................... 5

    B.   TMC Adequately Pleaded Elbit's Trade Secret Misappropriation
        (Count 2). ................................................................................. 7

        1.   TMC Identified Non-Patented Trade Secrets, Including
            Proprietary Designs and Manufacturing Techniques Used
            to Manufacture TMC's De-Icing Systems. ................ 7

        2.   TMC Adequately Pleaded Misappropriation by Elbit. ............ 10

    C.   TMC Adequately Pleaded A Claim Under California Business
        & Professions Code § 17200 (Count 3) ................................. 13

    D.   TMC Adequately Pleaded A Claim For California Common
        Law Unfair Competition (Count 4) ....................................... 14

        1.   TMC Adequately Pleaded Common Law Unfair
            Competition Under a Theory of Misappropriation. ............... 14

        2.   TMC Adequately Pleaded Common Law Unfair
            Competition Under a Theory of "Passing Off." ..................... 17

    E.   TMC Adequately Pleaded A Claim For Conversion (Count 5) ......... 18

        1.   TMC Has Pleaded a Claim for Conversion, Particularly
            Conversion of TMC's Manufacturing Equipment ................. 18

        2.   TMC's Claim For Conversion Is Not Superseded By The
            California Uniform Trade Secret Act ................................... 20

    F.   TMC Adequately Pleaded A Claim For Quasi-Contract ................... 22

        1.   Quasi-Contract May Constitute an Independent Claim. .......... 22

        2.   TMC's Quasi-Contract Claim is Based on Conduct
            Separate From Its Patent and Trade Secret Claims. ................ 23

    G.   Even if TMC's Claims Had Been Deficient, And They Were
        Not, The Proper Remedy Would Be Amendment .............................. 24

V.     CONCLUSION .................................................................................. 24

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF AUTHORITIES**

**Page**

**Cases**

*Agency Solutions Com., LLC v. TriZetto Grp., Inc.*,
   819 F. Supp. 2d 1001 (E.D. Cal. Sept. 13, 2011) .................................................. 12

*Amron Int'l Driving Supply, Inc. v. Hydrolinx Diving Commc'n, Inc.*
   No. 11-CV-1890-H (JMA), 2011 WL 5025178 (S.D. Cal. Oct. 21,
   2011) ........................................................................................................................ 21

*Angelica Textile Servs. Inc. v. Park*,
   220 Cal. App. 4th 495 (Cal. Ct. App. 2013)................................................ 21, 22

*Aqua Connect, Inc. v. Code Rebel, LLC*,
   No. CV 11-5764-RSWL MANX, 2012 WL 469737 (C.D. Cal.
   Feb. 13, 2012) ........................................................................................................ 12

*Ashcroft v. Iqbal*,
   129 S. Ct. 1937 (2009) ............................................................................................ 3

*Astiana v. Hain Celestial Grp., Inc.*,
   783 F.3d 753 (9th Cir. 2015) ................................................................................ 23

*AT&T Mobility LLC v. AU Optronics Corp.*,
   707 F. 3d 1106 (9th Cir. 2013) ............................................................................. 13

*Autodesk, Inc. v. Zwcad Software, Co., Ltd.*,
   No. 5:15-cv-01409-EJD (N.D. Cal. May 13, 2015) ........................................... 12

*Bank of the West v. Super. Ct. Of Contra Costa Cnty.*,
   2 Cal. 4th 1254 (Cal. 1992) ................................................................................. 17

*Barquis v. Merchants Collection Assn. Of Oakland, Inc.*,
   7 Cal. 3d 94 (Cal. 1972) ....................................................................................... 17

*Be In, Inc. v. Google Inc.*,
   No. 12-CV-03373-LHK, 2013 WL 5568706 ...................................................... 12

*Bell Atl. Corp. v. Twombly*,
   50 U.S. 544 (2007) ............................................................................................ 3, 7

Cooley LLP
Attorneys At Law
Los Angeles

ii.

**TMC's Opposition to Defendant's
Motion to Dismiss**

1

2

**TABLE OF AUTHORITIES**
**(continued)**

Page

3

4

*In re Bill of Lading Transmission & Processing Sys. Patent Litig.*,
   681 F.3d 1323 (Fed. Cir. 2012) ........................................................ 2, 5

5

6

*Bioriginal Food & Sci. Corp. v. Biotab Nutraceuticals Inc.*,
   No. CV13-5704 CAS EX, 2013 WL 6572573 (C.D. Cal. Dec. 13,
   2013) ...................................................................................................... 12

7

8

9

*Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.*,
   No. 10-cv-03428-LHK, 2011 WL 1044899 (N.D. Cal. Mar. 23,
   2011) ...................................................................................................... 13

10

11

*Burroughs Payment Sys. V. Symco Group, Inc.*,
   No. C-11-06268 JCS, 2012 WL 1670163 (N.D. Cal. May 14, 2012)
   ........................................................................................... 7, 8, 10, 11

12

13

*Cerra v. Blackstone*,
   172 Cal. App. 3d 604 (Cal. Ct. App. 1985).................................... 18, 19

14

15

*Chang v. Biosuccess Biotech Co.*,
   76 F. Supp. 3d 1022, 1043 (C.D. Cal. 2014)........................................ 22

16

17

*Chang v. Chen*,
   80 F.3d 1293 (9th Cir. 1996) ................................................................ 24

18

19

20

*Christianson v. Colt Indus. Operating Corp.*,
   822 F.2d 1544 (Fed. Cir. 1987), *vacated on jurisdictional grounds*,
   486 U.S. 800 (1988) ................................................................................ 9

21

*City Solutions, Inc. v. Clear Channel Commc'ns, Inc.*,
   365 F.3d 835 (9th Cir. 2004) .......................................................... 14, 16

22

23

24

*Cobra Sys. Inc. v. Accuform Mfg., Inc.*,
   No. 2:13-cv-05932-ODW(JEMx), 2014 WL 102608 (C.D. Cal.
   Jan. 9, 2014)........................................................................................... 14

25

26

*Coupons, Inc. v. Stottlemire*,
   588 F. Supp. 2d 1069 (N.D. Cal. 2008).............................................. 16

27

28

*Diodes, Inc. v. Franzen*,
   260 Cal. App. 2d 244 (Cal. Ct. App. 1968)....................................... 10

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

iii.

**TMC'S OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS**

1

2

**TABLE OF AUTHORITIES**
(continued)

Page

3

4

*E-Smart Techs., Inc. v. Drizin,*
    No. C 06-05528 MHP, 2009 WL 35228 (N.D. Cal. Jan. 6, 2009) ..................... 21

5

6

*Eminence Capital, LLC v. Aspeon, Inc.,*
    316 F.3d 1048 (9th Cir. 2003) ............................................................... 24

7

8

*Fields v. Wise Media, LLC,*
    No. 12-05160, 2013 U.S. Dist. LEXIS 87671 (N.D. Cal. June 21,
    2013) ............................................................................................. 18

9

10

11

*Gabriel Techs. Corp. v. Qualcomm Inc.,*
    No. 08-cv-1992-MMA (POR), 2009 WL 3326631 (S.D. Cal.
    Sept. 3, 2009) ................................................................................. 21

12

13

*Heller v. Cepia, LLC,*
    No. 11-01146 JSW, 2012 WL 13572 (N.D. Cal. Jan. 4, 2012) ........................ 21

14

15

*IMAX Corp. v. Cinema Techs., Inc.,*
    152 F.3d 1161 (9th Cir. 1998) ............................................................... 8

16

17

*Lester v. IPC Int'l Corp.,*
    No. 11-cv-06833, 2013 U.S. Dist. LEXIS 34892 (C.D. Cal.
    Mar. 12, 2013) ................................................................................ 24

18

19

*Levitt v. Yelp! Inc.,*
    765 F.3d 1123 (9th Cir. 2014) ............................................................... 3

20

21

*Lifeline Food Co., Inc. v. Gilman Cheese Corp.,*
    No. 5:15-cv-00034 PSG, 2015 WL 2357246 (N.D. Cal. May 15,
    2015) ............................................................................................. 22

22

23

*Mayo v. Gomez,*
    32 F.3d 1382 (9th Cir. 1994) ............................................................... 2

24

25

*Medina v. Microsoft Corp.,*
    No. C 14-0143 RS, 2014 WL 2194825 (N.D. Cal. May 23, 2014) ................... 13

26

27

*MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.,*
    420 F.3d 1369 (Fed. Cir. 2005) ............................................................. 5

28

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

iv.

**TMC'S OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS**

1

2

## TABLE OF AUTHORITIES
### (continued)

**Page**

3

4

*Mortgage Grader, Inc. v. Costco Wholesale Corp.*,
   89 F. Supp. 3d 1055, 1071 (C.D. Cal. 2015) ........................................ 6

5

6

*Munoz v. MacMillan*,
   195 Cal. App. 4th 648 (2011) ............................................................ 23

7

8

*Reiber v. Western Digital Corp.*,
   No. 2:14-CV-00763-KJM-EFB, 2015 WL 1509212 (E.D. Cal.
   Mar. 31, 2015 ................................................................................. 5, 6

9

10

*Ricoh Co., Ltd. v. Quanta Comput. Inc.*,
   550 F.3d 1325 (Fed.Cir.2008) ............................................................. 6

11

12

13

*RSPE Audio Solutions Inc. v. Vintage King Audio, Inc.*,
   No. 12-cv-06863 DDP, 2013 WL 1120664 (C.D. Cal. Mar. 18,
   2013) ................................................................................................ 22

14

*Rutherford Holdings, LLC v. Plaza Del Rey*,
   223 Cal. App. 4th 221 (2014) ............................................................ 23

15

16

*Sarkes Tarzian, Inc. v. Audio Devices, Inc.*,
   166 F. Supp. 250 (S.D. Cal. Oct. 23, 1958) ......................................... 8

17

18

*Silvaco Data Sys.*,
   184 Cal. App. 4th 210, 241-42 (Cal. Ct. App. 2010) .......................... 21

19

20

*SkinMedica, Inc. v. Histogen Inc.*,
   869 F. Supp. 2d 1176 (S.D. Cal. 2012) .............................................. 17

21

22

*Skinner v. Switzer*,
   131 S.Ct. 1289 (2011) ......................................................................... 5

23

24

*Smith v. Greenfield State Bank*,
   222 Cal. App. 2d 869 (Cal. Ct. App. 1963) ........................................ 19

25

26

*Starr v. Baca*,
   652 F.3d 1202 (9th Cir. 2011) ............................................................. 3

27

28

*SunPower Corp. v. SolarCity Corp.*,
   No. 12-cv-00694-LHK, 2012 WL 6160472 (N.D. Cal. Dec. 11,
   2012) ........................................................................................... 16, 22

1
2

# TABLE OF AUTHORITIES
## (continued)

**Page**

3
4
*Ultratech, Inc. v. Ensure NanoTech (Beijing), Inc.*,
    No. C 14-05361 WHA, 2015 WL 3547322 (N.D. Cal. June 5, 2015).......... 14, 16

5
6
*VasoNova Inc. v. Grunwald*,
    No. 12-c-02422 WHA, 2012 WL 4119970 (N.D. Cal. Sept. 18,
    2012) ..................................................................................................................... 22

7
8
9
*Via Techs., Inc. v. Asus Comput. Int'l*,
    No. 14-cv-03586-BLF, 2015 WL 3809382 (N.D. Cal. June 18,
    2015) ..................................................................................................................... 12

10 **Statutes**

11
12
35 U.S.C.
    § 271(a) ................................................................................................................... 3
    § 271(b) ................................................................................................................... 5

13
14
Cal. Bus. Prof. Code § 17200 ............................................................................. 13, 14, 23

15
16
17
Cal. Civ. Code
    § 3426.1(b)(1) ...................................................................................................... 12
    § 3426.1(b)(2)(i) ................................................................................................... 12
    § 3426.1(b)(2)(B)(ii) ............................................................................................ 12

18 California Trade Secrets Act ........................................................................................... 8

19
20
21
California Uniform Trade Secret Act
    § 3426.7 .......................................................................................................... 20, 21
    § 3426.7(a)-(b) ..................................................................................................... 20

22 CUTSA ..................................................................................................... 12, 16, 20, 21

23 **Other Authorities**

24
25
26
Fed. R. Civ. P.
    8 ............................................................................................................................. 2
    8(a) .................................................................................................................... 2, 3
    15(a) .................................................................................................................... 24

27
28

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

vi.

**TMC'S OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS**

## I.    INTRODUCTION

Defendant Elbit Systems of America ("Defendant" or "Elbit") acquired copies of Plaintiff TMC's proprietary designs, manufacturing specifications and equipment for innovative de-icing systems for unmanned aerial systems, from TMC's predecessor.  Knowing that it had no right to build systems without TMC's approval, Elbit decided to use TMC's designs and build copies of TMC's aerial systems—all without compensating TMC.  Now standing accused of patent infringement, trade secret misappropriation and conversion, among other counts, Elbit has continued to build the product themselves, refused to return TMC's proprietary technology, and is in the process of ramping up production.  Not surprisingly, Elbit's aerial system, built using TMC's proprietary design documents, infringes TMC's patent.  To slow this case and protect its current production obligations, Elbit raises hyper technical arguments that attempt to convert the pleadings stage of this case into a disposition on the merits.  The law only requires that the facts, in the light most favorable to the plaintiff, make out a plausible case of liability.  The Complaint, at a minimum, meets the plausibility standard.

## II.    STATEMENT OF FACTS

In 1995, Richard A. Olson and Mark R. Bridgeford founded Ice Management Systems ("IMS") to develop commercially acceptable de-icing systems for unmanned aerial vehicles ("UAVs"). (Compl. ¶¶ 6-8.) IMS licensed NASA's electro-expulsive de-icing technology concept and developed it for full-scale, practical use in aerial vehicles. (*Id.* at ¶ 8.) IMS performed years of research and development, and invested millions of dollars, to transform NASA's concept into UAV-scale, commercially viable de-icing systems. (*Id.*)

IMS uses both patent and trade secret to protect its de-icing systems, including U.S. Patent No. 9,108,735 (the "'735 patent"), which covers both IMS's de-icing system, as well as methods of using the system. (*Id.* at ¶¶ 12-15.)

Furthermore, IMS took precautions to maintain confidentiality by marking its proprietary designs and manufacturing process documents. (*Id.* at ¶ 9-10.) TMC is the successor to IMS's intellectual property rights, including all rights, title, and interest in the '735 patent, as well as the right to proprietary designs, manufacturing process specifications, and manufacturing equipment, including moulds and jigs developed to manufacture the de-icing system. (*Id.* at ¶¶ 11, 9, 16.) For over ten years, IMS and its successors have manufactured innovative electro-expulsive de-icing systems for unmanned-aerial vehicles. (*Id.* at ¶ 8.)

Elbit acquired copies of TMC's proprietary specifications, designs, and manufacturing equipment for a limited purpose. (Compl. ¶ 16.) But Elbit has continued to use TMC's proprietary specifications and designs beyond this limited purpose and without TMC's authorization, including providing these designs to a third party for manufacture. (*Id.* at ¶¶ 16-17.) Elbit manufactures the de-icing systems in Temecula, California and has hired employees of TMC's predecessor, IMS, to aid it in manufacturing de-icing systems through TMC's proprietary designs. (*Id.*) Elbit has now expanded its misuse of TMC's proprietary designs and the de-icing system—built in California—to the French and Polish militaries. (*Id.* at ¶ 18.)

## III.   LEGAL STANDARD

Federal Rule of Civil Procedure 8 requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). In a patent infringement case, the determination of whether a complaint has made such a statement is governed by regional circuit law. *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1331 (Fed. Cir. 2012).

In considering a motion to dismiss, the Court must consider the complaint in its entirety, accepting all factual allegations as true and construing the allegations in the light most favorable to the plaintiffs. *Mayo v. Gomez*, 32 F.3d 1382, 1384 (9th

Cir. 1994). As explained by the *Twombly* court, "we do not require heightened fact pleadings of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 50 U.S. 544, 552 (2007). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (*quoting Twombly*, 550 U.S. at 556)).

"The standard at this stage of the litigation is not that plaintiff's explanation must be true or even probable. The factual allegations of the complaint need only 'plausibly suggest an entitlement to relief.'" *Starr v. Baca*, 652 F.3d 1202, 1216-1217, 1239 (9th Cir. 2011) (*quoting Iqbal*, 129 S.Ct. at 1951). "As the Court wrote in *Twombly*, Rule 8(a) 'does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence' to support the allegations'" *Starr*, 652 F.3d at 1217 (*quoting Twombly*, 550 U.S. at 556). "In all cases, evaluating a complaint's plausibility is a 'context-specific' endeavor that requires courts to 'draw on . . . judicial experience and common sense." *Levitt v. Yelp! Inc.,* 765 F.3d 1123, 1135 (9th Cir. 2014) (citation omitted).

## IV.   ARGUMENT

### A.   TMC Adequately Pleaded Its Patent Infringement Claims (Count 1)

#### 1.   TMC adequately pleaded direct infringement based on ESA's manufacturing and offers for sale of TMC's patented De-Icing Systems.

"Whoever without authority [1] makes, [2] uses, [3] offers to sell, or [4] sells any patented invention, within the United States or [5] imports into the United States any patented invention during the term of the patent therefore, infringes the patent." 35 U.S.C. Section 271(a) (emphasis added).  There are thus five different ways to plead infringement under Section 271(a).

TMC adequately pleaded a cause of action for direct infringement.  For example, TMC pleaded that Elbit's manufactures the infringing patented electro-expulsive de-icing systems.  The allegations include:

> Elbit manufactures or causes to be manufactured electro-expulsive de-icing systems for use in unmanned aerial vehicles.  Elbit acquired TMC's proprietary specifications and designs, which describe how to manufacture the actuators claimed in the '735 patent, for a limited purpose.  Elbit has, however, used TMC's proprietary specifications and designs beyond its authorization.  In addition, Elbit has hired IMS employees to aid it in manufacturing de-icing systems based on TMC's proprietary designs.  Elbit manufactures the infringing de-icing systems in Temecula, California, which is located in this District.  Elbit's manufacturing and commercialization of TMC's proprietary de-icing systems directly infringes the '735 patent.  (Compl., ¶ 16.)

> Elbit has directly infringed and continues to directly infringe the '735 Patent.  The infringing acts include, but are not limited to, the manufacture of products practicing one or more claims of the '735 Patent.  (*Id.*, ¶ 16.)

Therefore, TMC's complaint adequately pleaded that Elbit has "made" the de-icing systems patented in the '735 patent, in the United States (i.e., Temecula, California) during the term of the patent.

Elbit does not dispute that TMC adequately pleaded direct infringement based on Elbit's manufacture of the patented devices.  Elbit motion only argues that TMC did not adequately allege specific facts regarding an alternate theory: that Elbit directly infringes by offering for sale the patented de-icing systems.  (Def's Mot., at 11-12.)   There is no case law supporting Elbit's argument that TMC must plead each of its alternative theories with specificity.  TMC adequately pleaded at least one theory as to why Elbit's actions constitute direct infringement under Section 271, and thus the cause of action should not be dismissed.

TMC has, moreover, provided sufficient facts regarding its allegation of direct infringement based on an offer for sale.  The infringing de-icing systems are manufactured in California by Elbit, a U.S. company, with its principle place of

1   business in Fort Worth, Texas. (*Id.*, ¶¶ 2, 4.)  Moreover, Elbit has offered to sell

2   infringing de-icing systems for military UAVs, including to the French and Polish

3   militaries.  (Compl., ¶¶ 18, 21.) Thus, a U.S. based company is manufacturing the

4   infringing products in the U.S. and offering them for sale. The facts support the

5   inference that such offers occur in the U.S. and have occurred before and after the

6   filing of the Complaint.  These facts support a cause of action for direct

7   infringement based on Elbit's offers for sale.

8           **2.     TMC adequately pleaded indirect infringement based on**
            **ESA's manufacturing and offers for sale of TMC's patented**
9           **De-Icing Systems.**

10          TMC's allegations meet the pleading standard for induced infringement,

11  which is governed by 35 U.S.C. § 271(b).  Section 271(b) renders liable anyone

12  who "actively induces patent infringement." *Id.*  A claim of induced infringement

13  requires: "(1) there has been direct infringement by another; (2) Elbit knew or

14  should have known its actions would induce actual infringement; and (3) Elbit had

15  specific intent to induce infringement by another."  *Reiber v. Western Digital*

16  *Corp.,* No. 2:14-CV-00763-KJM-EFB, 2015 WL 1509212, at *3 (E.D. Cal. Mar.

17  31, 2015) (citing *MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon*

18  *Corp.*, 420 F.3d 1369, 1378 (Fed. Cir. 2005)).

19          Elbit does not dispute that TMC adequately pleaded the first and second

20  elements, arguing only that TMC has not adequately pleaded the third prong – the

21  showing that Elbit had the requisite specific intent.  To establish a claim for induced

22  infringement, TMC must allege facts that, taken as true, plausibly demonstrate the

23  required specific intent.  *See In re Bill of Lading Transmission*, 681 F.3d 1323,

24  1339 (Fed. Cir. 2012) (holding that to plead inducement, plaintiff's complaint

25  "must contain facts plausibly showing that Appellees specifically intended their

26  customers to infringe [ ]. This does not mean, however, that [plaintiff] must prove

27  its case at the pleading stage.") (citing *Skinner v. Switzer*, 131 S.Ct. 1289, 1296

28  (2011)).  "Specific intent may be inferred from circumstantial evidence where a

defendant has both knowledge of the patent and specific intent to cause the acts constituting infringement." *Mortgage Grader, Inc. v. Costco Wholesale Corp.*, 89 F. Supp. 3d 1055, 1071 (C.D. Cal. 2015) (quoting *Ricoh Co., Ltd. v. Quanta Comput. Inc.*, 550 F.3d 1325, 1342 (Fed.Cir.2008)).

TMC pleaded extensive facts from which can be inferred that Elbit had the specific intent to cause the acts constituting infringement. For example, as TMC Complaint alleges, Defendant knew of the '735 patent from before its issuance, and knew that manufacture of electro-expulsive actuators according to the proprietary designs acquired from TMC would constitute infringement of the '735 patent. (*Id.*, ¶¶ 22, 25.)  Yet, Defendant provided TMC's proprietary designs to a third party manufacture and paid the manufacturer with the intent that the manufacturer would make de-icing systems according to the designs, which would thus infringe the '735 patent. (*Id.*, ¶¶ 22, 25.)  TMC allegations include:

> Elbit has caused to be manufactured infringing de-icing systems by providing TMC's proprietary designs to a third party for manufacture. (Compl., ¶ 17.)

> Elbit has indirectly infringed and continues to indirectly infringe the '735 Patent.  The infringing acts include, but are not limited to, inducing a third party to manufacture infringing products by providing TMC's proprietary designs to the third party and paying the third party to manufacture infringing de-icing systems.  Elbit induces manufacture of infringing de-icing systems with knowledge that those systems infringe the '735 Patent. (*Id.*, ¶ 22.)

> Elbit actually knew of the existence of the '735 Patent and of its infringement, but Elbit continues to infringe the '735 patent.  Elbit had knowledge of the application that became the '735 patent prior to the issuance of the '735 patent, and knew of the '735 patent from the date of issuance.  Elbit also knew that its manufacture of electro-expulsive actuators according to designs acquired from TMC constituted infringement of the '735 patent. (*Id.*, ¶ 25.)

These facts plausibly demonstrate that Elbit had the specific intent to induce its manufacturer to directly infringe the '735 patent. *See, e.g.*, *Reiber*, 2015 WL

1509212at *5 ("If defendant, with that alleged knowledge [of the patent], intentionally directed its suppliers to manufacture products that were infringing of these patents, then drawing all inferences in plaintiff's favor, the allegations permit an inference that defendant possessed specific intent to encourage infringement.") Indeed, according to the Complaint, the entire object of Elbit's third party manufacturing of the TMC's proprietary de-icing systems, was to create infringing systems.

Elbit appears to merely be arguing form over substance, arguing that TMC did not "mention" the word "intent." (Def's Mot. at 9-10.) The law does not require that pleadings contain any specific words, only that, when taken together, the complaint "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Twombly*, 550 U.S. at 556.

### B.   TMC Adequately Pleaded Elbit's Trade Secret Misappropriation (Count 2).

"To state a claim for misappropriation of trade secrets under the California Uniform Trade Secret Act, [plaintiff] must plead two primary elements: (1) the existence of a trade secret; and (2) misappropriation of the trade secret." *Burroughs Payment Sys. V. Symco Group, Inc.*, No. C-11-06268 JCS, 2012 WL 1670163 at *13-14 (N.D. Cal. May 14, 2012). Elbit argues that the complaint (a) fails to identify non-patented trade secrets, (Def's Mot. at 12-13) and (b) fails to properly allege how misappropriation occurred, (*id.* at 13-15). TMC's complaint adequately pleads both of these elements.

### 1.   TMC Identified Non-Patented Trade Secrets, Including Proprietary Designs and Manufacturing Techniques Used to Manufacture TMC's De-Icing Systems.

Elbit contends that the Complaint fails to identify trade secrets at issue that are not based on patented technology. (Def.'s Br. at 12-13.)

> A trade secret may consist of any formula, patterns, device or compilation of information which is used in one's business . . . . It may be a formula for a chemical compound, a process of manufacturing, treating or preserving materials, a pattern for a machine or other device, or a list of customers.

*Sarkes Tarzian, Inc. v. Audio Devices, Inc.*, 166 F. Supp. 250, 257 (S.D. Cal. Oct. 23, 1958) (emphasis added). The Ninth Circuit has held that a plaintiff asserting a violation of the California Trade Secrets Act ("CUTSA") "should describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons . . . skilled in the trade." *Burroughs*, 2012 WL 1670163 at *14 (quoting *IMAX Corp. v. Cinema Techs., Inc.*, 152 F.3d 1161, 1164-65 (9th Cir. 1998)).

However, Elbit acknowledges that TMC identified "proprietary design drawings [and] manufacturing techniques." (Def's Br. at 12 (citing Compl. ¶ 9).) Specifically, TMC Complaint alleges:

> IMS has developed patented technology and trade secrets to implement these systems, including United States Patent No. 9,108,735 (the "'735 Patent"). IMS's trade secrets include proprietary design drawings, manufacturing techniques, and manufacturing equipment including moulds and jigs (collectively, "Confidential Information"). IMS's products included de-icing systems practicing its trade secrets, proprietary designs, and the claims of the '735 patent. (Compl., ¶ 9.)

> The '735 patent describes electro-expulsive de-icing systems for aircraft using electrically produced mechanical motion to knock accumulated ice off a surface being de-iced. (*Id.*, ¶ 13; see also ¶¶ 12, 14-15 (explaining that the '735 patent at issue claims an "Electro-Expulsive De-Icing <u>System</u>.".)

> Elbit acquired TMC's <u>proprietary specifications and designs</u>, which describe <u>how to manufacture</u> the actuators claimed in the '735 patent, . . . . (*Id.*, ¶ 16 (emphasis added).)

Thus, the trade secrets explicitly identified in TMC's complaint include the proprietary specifications and designs which describe <u>how</u> to manufacture the de-

icing systems patented in the '735 patent.  (*Id.*, ¶¶ 9, 13, 16.)  These trade secrets are not covered by the '735 patent, which claims the patented de-icing system, not the method of manufacturing.  The design drawings and manufacturing techniques are the confidential information and trade secrets of TMC, developed by its predecessor, IMS, to manufacture the patented invention. (Compl. ¶¶ 9-11.) TMC's description is more than sufficient—identifying the design drawings and manufacturing techniques that —to enable Elbit to know what non-patented technology is at issue.

Elbit is simply wrong to the extent is it arguing that the technique for manufacturing a patented device cannot qualify as a trade secret.  (Def's Mot, at 12.)  Long-established Federal Circuit precedent has established that, even where the invented product is patented (and therefore, enabled), information related to the process of producing the system for commercial purposes, may be held back, subject to trade secret principles:

> [N]othing in patent law requires that a patentee must disclose data on how to mass-produce the invented product, in patents obtained on either individual parts of the product or on the entire product. . . . [T]he law requires that patents disclose inventions, not mass-production data, and that patents enable the practice of inventions, not the organization and operation of factories.

*Christianson v. Colt Indus. Operating Corp.*, 822 F.2d 1544, 1562 (Fed. Cir. 1987), *vacated on jurisdictional grounds*, 486 U.S. 800 (1988). Thus, the owner may protect "certain inventive features under patent principles and, with respect to the same general process, hold others subject to trade secret principles." Roger M. Milgrim, 2-9 Milgrim on Trade Secrets § 9.02[4][a] (2007).

As stated in its Complaint, TMC has made an effort to maintain secrecy of the proprietary design drawings and manufacturing techniques used to produce the patented invention for commercial purposes. (Compl. ¶¶ 9-11.) These are trade secrets and proprietary information owned and maintained by TMC. (*Id.*)

> "One who seeks to protect his trade secrets from wrongful use or disclosure does not have to spell out the details of the trade secret to avoid a demurrer to a complaint. To so require would mean that the complainant would have to destroy the very thing for which he sought protection by making public the secret itself."

*Burroughs*, 2012 WL 1670163 at *14 (quoting *Diodes, Inc. v. Franzen*, 260 Cal. App. 2d 244, 252-53 (Cal. Ct. App. 1968)). Accordingly, TMC adequately pleaded the identity of the misappropriated trade secrets.

### 2.   TMC Adequately Pleaded Misappropriation by Elbit.

Elbit also alleges that TMC failed to properly allege how the misappropriation occurred. (Def. Mot., at 13-15.)  Misappropriation is a broad act that can be violated by acquiring, disclosing, or using a trade secret through improper means.  California Uniform Trade Secret Act (2010).  TMC has alleged one specific type of misappropriation – that Elbit *used* the trade secrets improperly, by using them beyond their limited use rights. (Compl., ¶ 30.)[1]  The improper uses included, for example, Elbit's improper manufacturing of devices using the trade secret designs and manufacturing methods:

> Elbit manufactures or causes to be manufactured electro-expulsive de-icing systems for use in unmanned aerial vehicles.  Elbit acquired TMC's proprietary specifications and designs, which describe how to manufacture the actuators claimed in the '735 patent, for a limited purpose.  Elbit has, however, used TMC's proprietary specifications and designs beyond its authorization.  In addition, Elbit has hired IMS employees to aid it in manufacturing de-icing systems based on TMC's proprietary designs.  Elbit manufactures the infringing de-icing systems in Temecula, California, which is located in this District.

---

[1] Thus, to the extent Elbit argues that TMC did not adequately plead that Elbit improperly acquired the trade secrets from TMC, Elbit attempts to confuse the issues in two ways.  First, TMC argues improper use not acquisition for its misappropriation claim.  Second, while TMC alleges that Elbit acquired the property from TMC, that allegation is within the context of TMC as the successor to that property.

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

**TMC'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

Elbit's manufacturing and commercialization of TMC's proprietary de-icing systems directly infringes the '735 patent. (Compl., ¶ 16.)

TMC also alleged, for example, that Elbit improperly used TMC's trade secrets by making the manufacturing process and techniques available to a third party in order to manufacture the infringing de-icing system:

Elbit has caused to be manufactured infringing de-icing systems by providing TMC's proprietary designs to a third party for manufacture. (*Id.* at ¶ 17.)

TMC further alleged that this activity included exceeding the limits of its authorized use when it began employing TMC's trade secrets for its own manufacture, without TMC's authorization:

On information and belief, Elbit is using TMC's Confidential Information, without TMC's consent, to unlawfully compete against TMC. (*Id.* at ¶ 27.)

Elbit was and remains under a duty both to keep TMC's confidential, proprietary or trade secret information secret, and not to use or disclose such information other than for the benefit of TMC and only with TMC's authorization. Elbit knew or should have known that it acquired such information under circumstances giving rise to a duty to limit its use for authorized purposes. (*Id.* at ¶ 30.)

Elbit's conduct constitutes misappropriation of TMC's trade secrets through the unauthorized use of TMC's trade secret information. (*Id.* at ¶ 31.)

In doing so, TMC is able and has offered to sell to militaries, including foreign governments. (*Id.* at ¶ 18.)

"Misappropriation" is met when a person discloses or *uses* a trade secret of another without express or implied consent by a person who, at "the time of disclosure or use, knew or had reason to know that his or her knowledge of the trade secret was: . . . Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use . . . ." *Burroughs*, 2012 WL 1670163 at *15-16 (emphasis

Cooley LLP
Attorneys At Law
Los Angeles

11.

TMC'S OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS

1  added); Cal. Civ. Code § 3426.1(b)(2)(B)(ii) [2] "Employing the confidential

2  information in manufacturing, production, research or development, marketing

3  goods that embody the trade secret, or soliciting customers through the use of trade

4  secret information, all constitute use." *Agency Solutions Com., LLC v. TriZetto*

5  *Grp., Inc.*, 819 F. Supp. 2d 1001, 1028 (E.D. Cal. Sept. 13, 2011); *see also Via*

6  *Techs., Inc. v. Asus Comput. Int'l,* No. 14-cv-03586-BLF, 2015 WL 3809382, at

7  *4_ (N.D. Cal. June 18, 2015) ("Under the CUTSA, marketing goods that embody

8  the trade secret constitutes use of the trade secret.") (citations omitted).

9       Thus, the improper uses identified in TMC's complaint includes Elbit's use

10  of the proprietary designs and manufacturing techniques in its own production of

11  the de-icing systems in Temecula, California, as well as soliciting customers, such

12  as foreign militaries.  (*Id.*, ¶¶ 16, 17, 27, 30, 31.)  And TMC alleges that at the time

13  of these uses, Elbit remained under a duty to limit its use to only authorized use for

14  the benefit of TMC and knew or should have known of this duty. (*Id.*) TMC's

15  description is more than sufficient.  *See, e.g., Autodesk, Inc. v. Zwcad Software,*

16  *Co., Ltd.*, No. 5:15-cv-01409-EJD (N.D. Cal. May 13, 2015) ("there is no

17  requirement that Autodesk plead exactly how Defendants improperly obtained or

18  used the alleged trade secret. Again, as discovery has not yet commenced, it would

19  be unreasonable to require a plaintiff to demonstrate the precise ways in which

20

21  _____

22  [2] The cases cited by Elbit are inapposite as they all address improper acquisition
   and improper disclosure.  *See Be In, Inc. v. Google Inc.*, No. 12-CV-03373-LHK,

23  2013 WL 5568706, at *e (N.D. Cal. Oct. 9, 2013) (analyzing the pleading under
   only Cal. Civ. Code §§ 3426.1(b)(1) and (b)(2)(i), which require acquisition by

24  improper means); *Aqua Connect, Inc. v. Code Rebel, LLC*, No. CV 11-5764-RSWL
   MANX, 2012 WL 469737 (C.D. Cal. Feb. 13, 2012) (finding no improper means

25  where only allegation was acquisition based on reverse engineering); *Bioriginal*

26  *Food & Sci. Corp. v. Biotab Nutraceuticals Inc.*, No. CV13-5704 CAS EX, 2013
   WL 6572573, at *4-5 (C.D. Cal. Dec. 13, 2013) (finding facts did not support

27  improper acquisition or disclosure).

28

1    Defendants may have used their trade secrets, given that Defendants are the only
2    ones who possess such information." (internal citations omitted)).

3         At the pleading stage, the "court is not weighing the relative probability that
4    the facts alleged are true;" instead, it "is determining whether or not [plaintiff] has
5    alleged facts sufficient to provide the grounds of its entitlement to relief." *Brocade*
6    *Commc'ns Sys., Inc. v. A10 Networks, Inc.*, No. 10-cv-03428-LHK, 2011 WL
7    1044899, at *5 (N.D. Cal. Mar. 23, 2011) (denying a motion to dismiss a trade
8    secret misappropriation claim where Plaintiff alleged that defendants had copied
9    secret designs and recruited personnel from Plaintiff in order to obtain confidential
10   information). Accordingly, TMC adequately pleaded Elbit's misappropriating use
11   of TMC's trade secrets.

12   **C.    TMC Adequately Pleaded A Claim Under California Business &**
13          **Professions Code § 17200 (Count 3)**

14        California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 et
15   seq. ("UCL") provides a cause of action for harm caused by (1) unlawful, (2)
16   unfair, or (3) fraudulent business acts or practices. *AT&T Mobility LLC v. AU*
17   *Optronics Corp.*, 707 F. 3d 1106, n. 1 (9th Cir. 2013). A claim for statutory unfair
18   competition may proceed under any one of these three prongs. *See, e.g.*, *Medina v.*
19   *Microsoft Corp.*, No. C 14-0143 RS, 2014 WL 2194825 at *3-4 (N.D. Cal. May 23,
20   2014). The UCL "borrows violations from other laws by making them
21   independently actionable as unfair competition practices." *AT&T Mobility*, 707
22   F.3d at n.1.

23        Elbit argues only that if the Court dismisses all of TMC's other claims, then
24   there is no remaining predicate violation to sustain TMC's UCL claim. (Def's Mot.
25   at 19-21.) Elbit further admits that at least two of TMC's other alleged violations
26   are independently actionable as unfair competition practices under the UCL – (1)
27   California common law unfair competition; and (2) conversion of TMC's
28   manufacturing equipment. (*Id.* at 21.)

Cooley LLP
Attorneys At Law
Los Angeles

13.

TMC's Opposition to Defendant's
Motion to Dismiss

As described below, TMC has adequately alleged causes of action for <u>both</u> common law unfair competition and conversion.  Therefore, TMC adequately pleaded a claim under Section 17200 for unfair competition.

**D.  TMC Adequately Pleaded A Claim For California Common Law Unfair Competition (Count 4)**

California common law unfair competition "is normally invoked in an effort to protect something of value not otherwise covered by patent or copyright law, trade secret law, breach of confidential relationship, or some other form of unfair competition."  *City Solutions, Inc. v. Clear Channel Commc'ns, Inc.,* 365 F.3d 835, 842 (9th Cir. 2004).  A claim may be based on a defendant "passing off" its own product as the plaintiff's product.  In addition, a cause of action for common-law unfair competition may rest on a theory of misappropriation.  *City Solutions, Inc.,* F.3d at 842; *Cobra Sys. Inc. v. Accuform Mfg., Inc.,* No. 2:13-cv-05932-ODW(JEMx), 2014 WL 102608 (C.D. Cal. Jan. 9, 2014).  TMC adequately pleaded its claim under both theories.

**1.  TMC Adequately Pleaded Common Law Unfair Competition Under a Theory of Misappropriation.**

"A plaintiff sufficiently pleads common law unfair competition under California law by alleging '(1) that [plaintiff] had invested substantial time, skill or money in developing its property; (2) that [defendants] appropriated and used [plaintiff's] property at little or no cost; (3) that [defendants'] appropriation and use of [plaintiff's] property was without the authorization or consent of [plaintiff]; and (4) that [plaintiff] could establish that it has been injured by [defendants'] conduct.'"  *Ultratech, Inc. v. Ensure NanoTech (Beijing), Inc.,* No. C 14-05361 WHA, 2015 WL 3547322, at *7 (N.D. Cal. June 5, 2015) (quoting *City Solutions, Inc.,* 365 F.3d at 842.  TMC has pleaded extensive facts regarding these elements, including the following:

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

14.

TMC'S OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS

<u>TMC invested substantial resources</u> in the development of its intellectual property surrounding the electro-expulsive de-icing system, and further made substantial investments in building its business, reputation, and goodwill in marketing and distributing that system. (Compl. ¶ 49.)

IMS performed years of research and development, and invested millions of dollars, to transform NASA's concept into UAV-scale, commercially viable de-icing systems. For over ten years, IMS and its successors have manufactured innovative electro-expulsive de-icing systems for unmanned-aerial vehicles. (*Id.* ¶ 8.)

Elbit acquired TMC's proprietary specifications and designs, which describe how to manufacture the actuators claimed in the '735 patent, for a limited purpose. Elbit has, however, <u>used TMC's proprietary specifications and designs beyond its authorization.</u> In addition, Elbit has hired IMS employees to aid it in manufacturing de-icing systems <u>based on TMC's proprietary designs.</u> (*Id.* ¶ 16.)

Elbit has offered for sale electro-expulsive de-icing systems using, on information and belief, the patented technology for military UAVs, <u>without authorization from TMC.</u> (*Id.* ¶ 18.)

On information and belief, <u>Elbit is using TMC's Confidential Information, without TMC's consent,</u> to unlawfully compete against TMC. (*Id.* ¶ 27.)

Elbit has acted deliberately with the intent to unfairly <u>benefit from the expense, time, effort, and labor expended by TMC</u> in the research and development of its innovative electro-expulsive de-icing systems and its confidential intellectual property related thereto, and with a callous disregard for TMC's rights. On information and belief, Elbit undertook the above-described acts for the purpose of improperly competing against TMC in this market. TMC has suffered an injury in fact, including, on information and belief, lost money and property as a result of Elbit's unfair conduct. (*Id.* ¶ 43.)

TMC is informed and believes, and on that basis alleges, that in the course of manufacturing UAVs in direct competition to TMC, <u>Elbit has converted for its own use,</u> TMC's trade secrets, confidential information, and manufacturing equipment, <u>to an extent unauthorized by TMC.</u> (*Id.* ¶ 54.)

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

15.

TMC'S OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS

1    TMC's Complaint therefore amply alleged the four elements of common law
2    unfair competition: (1) that TMC (and its predecessor IMS) invested in developing
3    its proprietary de-icing system including its proprietary specifications and
4    manufacturing equipment, (*Id.,* ¶ 8, 16, 49); (2) that Elbit acquired and used this
5    property to build its own de-icing systems, without the considerable up-front
6    investment required by TMC, (*Id.* 8, 16, 43, 49); (3) Elbit's use was without TMC's
7    authorization, (*Id.,* ¶ 16, 18, 27); and (4) TMC has suffered an injury, including lost
8    money and property, as a result of Elbit's conduct.  (*Id.,* ¶ 43)  *See, e.g., Ultratech*,
9    2015 WL 3547322, at *8 (denying motion to dismiss where plaintiff plausibly
10   stated a claim for common law unfair competition based on misappropriation);
11   *Coupons, Inc. v. Stottlemire*, 588 F. Supp. 2d 1069, 1075 (N.D. Cal. 2008) (same
12   noting "Plaintiff is not required to allege that defendant attempted to secure its
13   clients.  Plaintiff only needs to allege facts specific to the [four *City Solutions*]
14   elements above.").

15   Elbit alleges that this common law unfair competition claim is preempted by
16   TMC's trade secret claim. TMC's common law claim, as explained above, is based
17   on Elbit's misappropriation of TMC's tangible personal property such as its
18   manufacturing equipment, not misappropriation of confidential information.
19   Where, as here, the common law misappropriation claim is based on
20   misappropriation of personal property, not information, there is no preemption
21   based on the California Uniform Trade Secret Act.  *Cf. SunPower*, 2012 WL
22   6160472, at *5-6 (N.D. Cal. 2012) (holding that unless there is a separate property
23   right, CUTSA preempts claims for the "taking of information," as the only property
24   right recognized in information is where the information meets the definition of a
25   trade secret).  The preemption cases cited by Elbit do not support a different
26   conclusion, as they are all based on misappropriation of information, as further
27   discussed in Section E.2 below.

28

**TMC'S OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS**

1
2

**2.    TMC Adequately Pleaded Common Law Unfair Competition Under a Theory of "Passing Off."**

3        With respect to TMC's allegation of common law unfair competition under

4   the theory of "passing off," Elbit argues that TMC has not provided "the identity of

5   ESA's customers" or alleged "that ESA's customers were confused as to the source

6   of ESA's products." This level of specificity—particularly "the identity of ESA's

7   customers"—is not required at the pleading stage, and Elbit cites no case law to the

8   contrary.[3]   Rather, the common law tort of unfair competition requires a showing of

9   "competitive injury."  *Bank of the West v. Super. Ct. Of Contra Costa Cnty.*, 2 Cal.

10  4th 1254, 1264-65 (Cal. 1992); *Barquis v. Merchants Collection Assn. Of Oakland,*

11  *Inc.*, 7 Cal. 3d 94, 109-10 (Cal. 1972).

12       In its complaint, TMC asserts that "On information and belief, Elbit has

13  passed off its intellectual property and products as those of TMC, in an effort to

14  exploit TMC's reputation in the market and gain an unearned economic benefit."

15  (Compl. ¶ 50.) TMC made substantial investments in buildings its business,

16  reputation, and goodwill in marketing and distributing its patented system. (*Id.* at ¶

17  49.) Elbit's continued use of TMC's manufacturing equipment and proprietary

18  manufacturing information not only allows it to offer the patented system for sale,

19  without TMC's authorization, (*id.* at ¶ 18), but prevents TMC from being able to

20  manufacture the product, (*id.* at ¶ 56), essentially allowing Elbit to step into TMC's

21  shoes and pass off its goods as TMC's, (*id.* at ¶ 50). Accordingly, TMC has

22  _____

23  [3] Defendant incorrectly cites to *SkinMedica, Inc. v. Histogen Inc.*, 869 F. Supp. 2d
    1176, 1189 (S.D. Cal. 2012).  In *SkinMedica*, the Court dismissed the common law
24  unfair competition claim of counter-claimant Histogen at the summary judgment
    stage, where Histogen's sole evidence in support of its claim, a declaration by its
25  founder, did not include an allegation that SkinMedica's customers had been
26  confused.  *Id.* at 1188-89; *compare* Def's Mot. at 19 (stating that the *SkinMedica*
    court "dismiss[ed a] common law unfair competition claim where the complaint
27  "does not even allege that any . . . customers were confused or made any decisions
28  based on a misunderstanding.") (emphasis added).

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

17.

TMC'S OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS

1    sufficiently pleaded a claim for common law unfair competition.

2        **E.    TMC Adequately Pleaded A Claim For Conversion (Count 5)**

3            **1.    TMC Has Pleaded a Claim for Conversion, Particularly
4                    Conversion of TMC's Manufacturing Equipment**

5        To show conversion, a plaintiff must show three elements: (1) ownership or

6    right to possession of the property at the time of the conversion; (2) a defendant's

7    wrongful interference with the claimant's possession; and (3) damage to the

8    claimant. *Fields v. Wise Media, LLC*, No. 12-05160, 2013 U.S. Dist. LEXIS 87671

9    at *18-19 (N.D. Cal. June 21, 2013); *Cerra v. Blackstone*, 172 Cal. App. 3d 604,

10   609 (Cal. Ct. App. 1985). Elbit does not challenge elements two and three; rather, it

11   argues that TMC failed to plead possession of the property at the time of

12   conversion. (Def's Br. at 15-16.) This argument is unavailing, because the standard

13   does not require that TMC allege conversion from its own physical possession at

14   the time of conversion—only that TMC allege a "right to possession" at the time of

15   the conversion. As required, TMC's Complaint alleges that Elbit has kept and

16   continues to use TMC's manufacturing equipment after TMC acquired the rights to

17   the equipment as successor of IMS.  For example, TMC has alleged:

18       TMC is the successor to IMS. (Compl., ¶ 11.)

19
20       TMC is also the owner [as successor to IMS] of moulds, jigs, and other
         proprietary manufacturing equipment developed for use in
21       manufacturing its patented de-icing systems.  (*Id.*, ¶ 53.)

22       Elbit manufactures or causes to be manufactured electro-expulsive
         deicing systems for use in unmanned aerial vehicles. Elbit acquired
23       TMC's proprietary specifications and designs, which describe how to
24       manufacture the actuators claimed in the '735 patent, for a limited
         purpose. Elbit has, however, used TMC's proprietary specifications
25       and designs beyond its authorization. In addition, Elbit has hired IMS
26       employees to aid it in manufacturing de-icing systems based on
         TMC's proprietary designs. Elbit manufactures the infringing de-icing
27       systems in Temecula, California, which is located in this District.

28

Cooley LLP
Attorneys At Law
Los Angeles

18.

TMC'S OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS

Elbit's manufacturing and commercialization of TMC's proprietary de-icing systems directly infringes the '735 patent. (*Id.*, ¶ 16.)

TMC is informed and believes, and on that basis alleges, that in the course of manufacturing UAVs in direct competition to TMC, Elbit has converted for its own use, TMC's trade secrets, confidential information, and manufacturing equipment, to an extent unauthorized by TMC. (*Id.*, ¶ 54.)

As a direct and proximate result of Elbit's acts of conversion, TMC has suffered damages due to, among other things, the lost value of its trade secrets, confidential information, and manufacturing equipment. (*Id.*, ¶ 56.)

Even where a defendant originally obtained possession lawfully, once it is determined that the plaintiff has a right to possession, he has standing to bring a claim for conversion. *Id.*; *Smith v. Greenfield State Bank*, 222 Cal. App. 2d 869, 874 (Cal. Ct. App. 1963) ("Conversion by wrongful retention of possession is also inherent in refusal to turn over possession."). Thus, the "time of the conversion" does not necessarily coincide with the time at with a defendant originally obtains the property. For example, in *Cerra*, a car dealer rightfully repossessed a truck from the plaintiff, who was behind on payments. *Cerra*, 172 Cal. App. 3d at 609. The court found that under Vehicle codes, the plaintiff gained the right to possess the truck when he offered to make full payment. *Id.* The Court held that "[o]nce it is determined that Cerra has a right to reinstate the contract, he has a right to possession of the vehicle and standing to bring conversion." *Id.* at 609-10.

TMC's complaint explains that its predecessor to the proprietary information and manufacturing process, IMS, developed the property and that "TMC is the successor to IMS." (Compl. at ¶ 11.) The complaint further states that "Elbit acquired TMC's proprietary specifications and designs . . . for a limited purpose. Elbit has, however, used TMC's proprietary specifications and designs beyond its authorization." (*Id.* at ¶ 16.) "TMC has also been unable to use the equipment for its own benefit." (*Id.* at ¶ 56.) As successor, TMC acquired a right to the proprietary

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

19.

TMC'S OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS

1  specifications, designs, and manufacturing equipment. (*See id.* at ¶¶ 11, 16, 56
2  ("TMC's proprietary specifications and designs").) Therefore, the "time of
3  conversion" occurred when Elbit continued to use the proprietary specifications,
4  designs, and equipment beyond its limited grant and without the authorization of
5  TMC, (*id.* at ¶ 16-17); Elbit converted these materials for its own purpose and
6  prevented TMC from being able to use the equipment, (*id.* at ¶ 56). Thus, TMC has
7  alleged its right to possession of the property at the time of the conversion, (*id.* at ¶¶
8  9-11, 16, 52-54), the Elbit's conversion by wrongful continued use of the property
9  rights without authorization of TMC, (*id.* at ¶ 16-17, 52-54), and damages
10  consisting of TMC's inability to use the equipment and manufacture de-icing
11  systems, as well as the lost value of its manufacturing equipment, (*id.* at ¶ 56).[4]

12  
13  ## 2.   TMC's Claim For Conversion Is Not Superseded By The California Uniform Trade Secret Act

14  Elbit also asserts that TMC's conversion claim is preempted by TMC's trade
15  secret claim under CUTSA. (Def's Br. at 16-17.) As discussed above, Section
16  3426.7 of CUTSA states:

17  
18  (a) Except as otherwise expressly provided, this title does not
      supersede any statute relating to misappropriation of a trade secret, or
19  any statute otherwise regulating trade secrets.

20  (b) This title does not affect . . . (2) other civil remedies that are not
      based upon misappropriation of a trade secret.
21  
22  Cal. Uniform Trade Secret Act § 3426.7(a)-(b).

23  
24  _____

25  [4] Defendant improperly attempts to raise questions about the ownership of the
    property formerly belonging to IMS, by attempting to introduce issues related to a
26  state court action challenging TMC's ownership. (Def's Mot. at 3-4.) As explained
    in TMC's Response to Defendant's Request for Judicial Notice, even if questions
27  of ownership were relevant at the pleadings stage, the state court in that action has
28  entered judgment favor of TMC.

1   CUTSA does not preempt "claims that, although related to a trade secret
2   misappropriation, are independent and based on facts distinct from the facts that
3   support the misappropriation claim." *Angelica Textile Servs. Inc. v. Park*, 220 Cal.
4   App. 4th 495, 506 (Cal. Ct. App. 2013) (citing *Silvaco Data Sys.*, 184 Cal. App. 4th
5   210, 241-42 (Cal. Ct. App. 2010); *Amron Int'l Driving Supply, Inc. v. Hydrolinx*
6   *Diving Commc'n, Inc.* No. 11-CV-1890-H (JMA), 2011 WL 5025178 (S.D. Cal.
7   Oct. 21, 2011); *Gabriel Techs. Corp. v. Qualcomm Inc.*, No. 08-cv-1992-MMA
8   (POR), 2009 WL 3326631 (S.D. Cal. Sept. 3, 2009); *E-Smart Techs., Inc. v. Drizin*,
9   No. C 06-05528 MHP, 2009 WL 35228 (N.D. Cal. Jan. 6, 2009)). Furthermore, the
10  court in *Silvaco* explained that there is a distinction between intangible intellectual
11  property and a tangible piece of property: "'Information' cannot be 'stolen' unless
12  [it] constitutes *property*. And information is not property unless some law makes it
13  so." *Heller v. Cepia, LLC*, No. 11-01146 JSW, 2012 WL 13572, at *7 (N.D. Cal.
14  Jan. 4, 2012) (emphasis added) (dismissing a complaint in which the plaintiff's
15  conversion claim was based only on the theft of confidential information).

16      In particular, TMC's conversion claim is not superseded, because it is based
17  on Elbit's unlawful possession of TMC's proprietary tangible property. *Id.* at 499,
18  508, 510-11 (reversing the dismissal of a claim for conversion as preempted by a
19  CUTSA claim where the conversion claim was for tangible property, the documents
20  which contained the alleged trade secrets). TMC's conversion claim alleges that
21  Elbit converted TMC's tangible personal property including design documents,
22  jigs, and moulds.  (Compl. ¶¶ 53-54, 9-11, 16.) Tangible personal property confers
23  separate property rights than the rights conferred to trade secrets. *See Angelica*, 220
24  Cal. App. 4th at 499. Thus, a claim for conversion of such personal property cannot
25  be "based on misappropriation of a trade secret" and is not superseded. Cal.
26  Uniform Trade Secret Act § 3426.7; *Angelica*, 220 Cal. App. 4th at 499, 508, 510-
27  11.

28      Cases cited by Elbit in support of its preemption assertion are not applicable,

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

21.

**TMC'S OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS**

because they focused on preemption of conversion claims based on theft of information, rather than tangible property that had a distinct property interest. *See, e.g.*, *Lifeline Food Co., Inc. v. Gilman Cheese Corp.*, No. 5:15-cv-00034 PSG, 2015 WL 2357246, at \*4 (N.D. Cal. May 15, 2015) (distinguishing *Angelica* because plaintiff did not allege facts claiming converted property other than the alleged trade secret--a proprietary cheese-making formula); *RSPE Audio Solutions Inc. v. Vintage King Audio, Inc.*, No. 12-cv-06863 DDP (PJWx), 2013 WL 1120664, at \*3 (C.D. Cal. Mar. 18, 2013) (acknowledging that the complaint was unclear, that the plaintiff had specifically alleged any theft of non-trade secret property, and focusing on property rights in "proprietary information," such as client contact information, employee compensation terms, customer preferences, pricing, etc.); *SunPower Corp. v. SolarCity Corp.*, No. 12-cv-00694-LHK, 2012 WL 6160472, at \*7 (N.D. Cal. Dec. 11, 2012) (finding the plaintiff's only basis for conversion to be computer files containing proprietary information); *VasoNova Inc. v. Grunwald*, No. 12-c-02422 WHA, 2012 WL 4119970, at \*4 (N.D. Cal. Sept. 18, 2012) (finding a plaintiff's conversion claim preempted where it was based misappropriation of information contained within plaintiff's patent applications); *Chang v. Biosuccess Biotech Co.*, 76 F. Supp. 3d 1022, 1043 (C.D. Cal. 2014). (finding that plaintiff failed to show how misappropriated physical property, *i.e.*, documents and a computer, had any value other than through the trade secrets stored on that property).

Accordingly, TMC sufficiently pleaded a claim for conversion, based on theft of design documents and manufacturing equipment.

### F.   TMC Adequately Pleaded A Claim For Quasi-Contract

#### 1.   Quasi-Contract May Constitute an Independent Claim.

Elbit argues that quasi-contract is not an independent cause of action and only a restitutionary remedy. (Def's Br. at 22.)  The Ninth Circuit recently stated that "[w]hen a plaintiff alleges unjust enrichment, a court may 'construe the cause

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

22.

TMC'S OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS

of action as a quasi-contract claim seeking restitution.'" *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) (quoting *Rutherford Holdings, LLC v. Plaza Del Rey*, 223 Cal. App. 4th 221 (2014)).  The Ninth Circuit thus endorsed a quasi-contract claim as a standalone cause of action.

In *Astiana*, the plaintiff alleged "that she was entitled to relief under a 'quasi-contract' cause of action because Hain had 'entic[ed]' plaintiffs to purchase their products through 'false and misleading' labeling, and that Hain was 'unjustly enriched' as a result."  *Id.* at 762.  The district court dismissed the quasi-contract cause of action, concluding that restitution is not a standalone cause of action in California.  *Id.*  The Ninth Circuit reversed, holding that "[t]his straightforward statement is sufficient to state a quasi-contract cause of action."  *Id.*

The Ninth Circuit explained that although "there is not a standalone cause of action for 'unjust enrichment,'" that claim "is synonymous with 'restitution,'" and "unjust enrichment and restitution are not irrelevant in California law.  Rather, they describe the theory underlying a claim that a defendant has been unjustly conferred a benefit 'through mistake, fraud, coercion, or request.'"  *Id.* (internal citations omitted).  The Ninth Circuit went on to explain that "[t]he return of that benefit is the remedy 'typically sought in a quasi-contract cause of action.'" *Id.* (citing *Munoz v. MacMillan*, 195 Cal. App. 4th 648 (2011) ("Common law principles of restitution require a party to return a benefit when the retention of such benefit would unjustly enrich the recipient; a typical cause of action involving such remedy is 'quasi-contract.'")).  Thus, this more recent Ninth Circuit case law makes clear that quasi-contract is an independent cause of action.

## 2. TMC's Quasi-Contract Claim is Based on Conduct Separate From Its Patent and Trade Secret Claims.

Elbit further argues that the quasi-contract claim is preempted by both the patent infringement and misappropriation of trade secret claims. (Def's Br. at 22-23.)  Again, as with the § 17200 claim, however, Elbit admits that at least two types

Cooley LLP
Attorneys At Law
Los Angeles

23.

TMC's Opposition to Defendant's
Motion to Dismiss

of allegations still support TMC's claim – (1) the allegations underlying TMC's common law unfair competition claim; and (2) the allegations underlying the TMC's conversion claim. As described above, the actions underlying these claims support Elbit's theory of quasi-contract, and thus, Elbit is entitled to restitution under its Quasi-Contract claim.

### G.   Even if TMC's Claims Had Been Deficient, And They Were Not, The Proper Remedy Would Be Amendment

Dismissal with prejudice and without leave to amend is not appropriate unless it is clear that the complaint could not be saved by amendment. *Chang v. Chen*, 80 F.3d 1293, 1296 (9th Cir. 1996).

> In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'

*Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051-52 (9th Cir. 2003). "[T]his policy is to be applied with extreme liberality." *Lester v. IPC Int'l Corp.*, No. 11-cv-06833, 2013 U.S. Dist. LEXIS 34892 at *4-5 (C.D. Cal. Mar. 12, 2013) (quoting *Eminence*, 316 F.3d at 1051). "Absent prejudice, or a strong showing of any of the remaining *Forman* factors, there exists a *presumption* under Rule 15(a) in favor of granting leave to amend." *Id.* at 1052. Elbit's motion should be denied in its entirety, but as to any claim that is not, TMC should be afforded the opportunity to amend so that the case can proceed on the merits.

## V.   CONCLUSION

For all of the reasons provided above, the Court should deny Elbit's motion to dismiss so that the case can proceed on its merits. As to any claim the Court finds deficient, the Court should permit TMC to amend.

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

24.

TMC'S OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS

1

Dated: January 8, 2015                **COOLEY LLP**

2

By: */s/ Wayne Stacy*
3
William P. Donovan, Jr.
1333 2nd Street, Suite 400
4
Santa Monica, CA  90401
Telephone:   (310) 883-6400
5
Facsimile:   (310) 883-6500
Email: wdonovan@cooley.com
6

Wayne Stacy (admitted *pro hac vice*)
7
380 Interlocken Crescent, Suite 900
Broomfield, CO 80021-8023
8
Telephone:  (720) 566-4125
Facsimile:   (720) 566-4099
9
Email: wstacy@cooley.com

10
Priya B. Viswanath
3175 Hanover Street
11
Palo Alto, CA  94304-1130
Telephone:     (650) 843-5000
12
Facsimile:       (650) 849-7400
Email: pviswanath@cooley.com
13

Attorneys for Plaintiff
14
TMC AEROSPACE, INC.

15

16

17

18

19

20

21

22

23

24

25

26

27

28